**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|   v. | ) | Case No: 18 CR 50034 |
| | ) | |
| Lumont Johnson, | ) | |
| | ) | |
|     *Defendant*. | ) | Judge Frederick J. Kapala |

**ORDER**

Defendant's motion for revocation of detention order [125] is denied.

**STATEMENT**

    Defendant, Lumont Johnson, is charged along with codefendants, Tyjuan Anderson and Justin Hill, with conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841 & 846. This matter is before the court on Johnson's motion for revocation of the magistrate judge's order detaining him pending trial which followed a detention hearing held on July 16, 2018. For the reasons stated below, the court denies the motion. Johnson will remain in custody pending trial.

**I. ANALYSIS**

    Section 3145(b) permits a defendant to file a motion seeking review or revocation of a detention order when the defendant has been "ordered detained by a magistrate judge." 18 U.S.C. § 3145(b). The court's review of such an order is de novo, since it must make an independent determination of the proper pretrial detention or conditions for release. United States v. Torres, 929 F.2d 291, 292 (7th Cir. 1991); United States v. Portes, 786 F.2d 758, 761 (7th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); Portes, 786 F.2d at 765. Clear and convincing evidence is something more than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt. Addington v. Texas, 441 U.S. 418, 425 (1979). Detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required. Portes, 786 F.2d at 765.

    The Bail Reform Act creates several "rebuttable presumptions" to be applied when determining whether there is any condition or combination of conditions that will reasonably assure the appearance of the defendant at trial and the safety of the community. One of those presumptions applies specifically to persons like defendant who are charged with major drug felonies:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed--

(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.

18 U.S.C. § 3142(e)(3)(A); see also United States v. Dominguez, 783 F.2d 702, 706 (7th Cir. 1986). This probable cause finding may be based solely on an indictment charging crimes sufficient to trigger the presumptions. Id. at 706 n.7 ("A defendant indicted for crimes that trigger the presumptions in § 3142(e) should expect the presumption to be applied to him and proceed accordingly.").

In this case, there is no doubt–and Johnson concedes–that both the indictment and the evidence presented at the detention hearing trigger the rebuttable presumption. To rebut this presumption, defendant must come forward with sufficient evidence that he will not flee or endanger the community. Id. at 706. This does not necessarily require a showing that the defendant is not guilty of the crimes charged. Id. at 707. Rather, the defendant could also show that "the specific nature of the crime charged, or that something about their individual circumstances, suggest that 'what is true in general is not true in the particular case.'" Id. Even if a defendant is able to rebut one or both of the presumptions–flight risk or danger to the community–they do not drop out of the detention analysis. The Seventh Circuit explained:

> [They do] not disappear when rebutted, like a "bursting bubble" presumption, nor do they actually shift the burden of persuasion to the defendant. They are "rebutted" when the defendant meets a "burden of production" by coming forward with some evidence that he will not flee or endanger the community if released. Once this burden of production is met, the presumption is "rebutted". . . . Use of that word in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).

Id. at 707. Consistent with a criminal defendant's presumption of innocence, the burden of persuasion remains with the government once the burden of production is met. Id.

The factors to be considered by the court in determining whether there are conditions that will reasonably assure Johnson's appearance and the safety of any other person and the community include: (1) the nature and circumstances of the offense, including whether the offense involves a controlled substance; (2) the weight of the evidence against Johnson; (3) Johnson's history and characteristics, including (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense of arrest, Johnson was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for another offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Based on a review of these factors outlined below, the court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of others and the community if Johnson is released pending trial.

### (1) The Nature and Circumstances of the Offense Charged, Including Whether the Offense Involves a Controlled Substance

Due to the weight of the evidence against Johnson proffered by the government at the detention hearing before the magistrate judge, in Federal Bureau of Investigation ("FBI") Special Agent Jeremy K. Smith's affidavit supporting the criminal complaint filed in this case, and at the hearing before this court, the court finds that there is probable cause to believe that defendant has committed the offense of conspiracy to distribute heroin and cocaine. This is a serious offense punishable by a term of imprisonment up to 20 years and, therefore, an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act. As such, it is presumed, subject to rebuttal by defendant, that no condition or combination of conditions will reasonably assure the appearance of defendant as required and the safety of the community. See 18 U.S.C. § 3142(e)(3)(A). As discussed below, Johnson has offered some evidence to rebut this presumption. In particular, his employment at Fiat Chrysler Automobiles, in Belvidere, Illinois, since May 31, 2017, his family ties, and his ties to the community. Nevertheless, taking into careful consideration the balance of the § 3142(g) factors, the court concludes that the government has met its burden of showing that there are no conditions of release that will reasonably assure the safety of any other person and the community.

### (2) The Weight of the Evidence Against Defendant

The charge against Johnson is based on the investigation by the FBI and the Winnebago County Sheriff's Department ("WCSD") of a drug-trafficking organization led by Tyjuan Anderson which has been distributing heroin and cocaine in the Rockford, Illinois area. With regard to Johnson, on May 25, 2018, Johnson sent a text message to Anderson's cell phone that read "zip done." Agent Smith indicated that he recognizes the term "zip" as slang commonly used to refer to an ounce of a controlled substance. Later that day, agents observed Hill, and then Johnson, arrive at Anderson's residence and, based on intercepted calls and surveillance, agents believe that Anderson obtained narcotics from Hill and then provided an ounce, or a "zip," to Johnson. Thereafter, Anderson received a call from an unidentified individual who ordered narcotics from Anderson and discussed meeting in a parking lot. Next, Anderson and Johnson drove to the parking lot of a motel on East State Street where Anderson and Johnson supplied an unidentified individual with narcotics. In addition, video surveillance obtained on May 28, 2018, shows Anderson and Johnson leave in a white Impala and travel to Cristoval Santiago Medina's residence where agents observed Medina get into the Impala with Anderson and Johnson and conduct what agents, based on intercepted cell phone conversations and observations, believed to be a drug transaction. Agents have also concluded that Johnson uses the nickname "Skinny" based on a combination of intercepted communications and surveillance. During a May 29, 2018 intercepted call between Anderson and Hill, Anderson told Hill that "Skinny" was trying to "28 it" on "Christina." According to Agent Smith, "Christina" is a slang term for cocaine and that "28 it" is a reference to 28 grams of cocaine, or approximately one ounce, and that during the conversation Anderson and Hill determined that neither one of them had an ounce of cocaine to sell to Johnson at the time.

Defendant characterizes the government's case as weak arguing that he was not the person in the Impala with Anderson, he was only with Anderson on other occasions because Anderson is his life-long friend; he has never gone by the name "Skinny," but rather has always gone by "Mont"; and law enforcement authorities are framing him once again in violation of his constitutional rights. While defendant certainly has the right to advance these theories and defenses at trial in an effort to persuade the jury, the court has not by these arguments been persuaded that the government's case is weak. Therefore, the court finds that the government's case against the defendant is strong and this factor weighs in favor of detaining defendant pending trial.

### (3) The History and Characteristics of the Person

Johnson makes much of the fact that he has no prior felony convictions. However, Johnson's criminal history, though not felonious, is lengthy and demonstrates his life-long defiance of the law. His criminal history spans from 1992 to the present charges based on conduct allegedly committed in 2018. Additionally, as noted below, Johnson is currently charged with a felony offense in state court based on his alleged possession of a firearm on January 24, 2017. Defendant argues that it is not appropriate for this court to rely on arrests that have resulted in the dismissal of charges. The court has not done so. Instead, the court finds that Johnson's criminal convictions demonstrate a repeated and ongoing disregard for the law. In this court's judgment, Johnson's criminal history makes it unlikely that he will abide by any pretrial conditions of release that this court could impose.

Section 3142(g)(3)(A) also requires the court to take into account Johnson's character and past conduct. During his deposition in Lumont Johnson, et al. v. The City of Rockford, et al., No. 15 C 50064, Johnson admitted that he, Anthony Ross, and Tyjuan Anderson were members of the Black P. Stone street gang, also known as the "Moes," and on April 14, 2002, that they were involved in an altercation with Alex Dowthard, a member of a rival street gang called the Gangster Disciples. Specifically, Dowthard flashed a gang sign at Johnson, Ross, and Anderson, words were exchanged, and ultimately Dowthard fired gunshots from his vehicle at Johnson's vehicle as both traveled on the streets of Rockford. Later that morning, in an act of apparent retaliation, bullets were fired through a bedroom window of Alex Dowthard's mother's house and eight-year-old Demarcus Hanson was killed. During his deposition in the civil case, Johnson testified that on the morning of the murder Kefentse Taylor told him that "I got at him." In his brief opposing summary judgment in the civil case, Johnson states, "Mr. Taylor admitted to Mr. Johnson that he 'got at him' for shooting at Mr. Johnson's truck." The State of Illinois secured murder convictions against Johnson, Anderson, and Ross, despite their theory that the actual murderers were fellow and allied gang members Casel Montgomery and Kefentse Taylor. In 2013, Johnson, Anderson, and Ross, were granted a new trial. Johnson, Anderson, and Ross were acquitted at their 2015 retrial after the State was unable to secure Dowthard's testimony. The importance of these events to the instant analysis is that, whether it was Johnson, Anderson, and Ross who shot into Dowthard's mother's house or instead Montgomery and Taylor, it was an act of retaliatory gang violence directly related to Johnson's gang activity which resulted in the death of an eight-year-old boy. Therefore, Johnson's past gang activity presents a significant risk to the community and is a factor weighing heavily against his pretrial release.

Johnson's family ties, employment, financial resources, length of residence in the community, and community ties have been offered by Johnson in support of his request for release

and the court has considered them. Johnson argues particulary that if released he will continue working at his full-time employment in order to support his children. It is especially significant that Johnson has worked at Chrysler for over a year and, although not demonstrated with any certainty, still has a job waiting for him there.[1] Nevertheless, all these positive aspects of Johnson's life that arose after Johnson was released from prison in 2013 suggested that he had made the choice to leave his life of criminal activity behind him. That choice, it seemed, allowed him to be a supportive father and productive member of society. Unfortunately, there is now probable cause to believe that, at least by May 2018, Johnson decided to revert to his former criminal lifestyle and engage in drug trafficking.

Other factors which § 3142(g)(3) requires the court to take into account are history relating to drug or alcohol abuse and his mental condition. According to the pretrial services report, Johnson abuses marijuana. It is common knowledge that substance abuse reduces the inhibitions of individuals and makes them less likely to make good decisions such as abiding by the conditions of their pretrial release. Adding to his instability, Johnson has also reported that he was diagnosed with Bi-Polar Disorder and PTSD in 2013, following his release from IDOC. Thus, these factors further support a finding that no conditions of release will assure the safety of the community.

Johnson's record concerning appearance at court proceedings is another § 3142(g)(3)(A) factor. There is some evidence in the record of Johnson failing to appear for scheduled court appearances during his life. However, the record is not developed enough for this court to rely on these incidents in making the release-or-detain determination. Nevertheless, the pretrial services report indicates that the state court increased Johnson's bond on two occasions during the time period he was released on bond pending retrial on the murder charge. This history of non-compliance with the terms of bond undermines the likelihood Johnson would comply with any condition or combination of pretrial release conditions imposed by this court.

Significantly, § 3142(g)(3)(B) requires this court to take into account whether at the time of the current offense or arrest Johnson was on release pending trial on an offense under state law. It is undisputed that during the time of the charged conduct in this case and at the time of his arrest in this case Johnson was released on bond in Winnebago County case number 17 CF 210, in which he is charged with unlawful possession of a firearm by a street gang member in violation of 720 ILCS 5/24-1.8(a)(1), a class 2 felony under Illinois law, and case number 17 TR 1962, in which defendant is charged with driving on a suspended driver's license. The allegations in Agent Smith's affidavit strongly suggest that Johnson was not in compliance with the terms of his bond and undermine the likelihood he would comply with any condition or combination of conditions that this court might impose. Johnson maintains that he is also being framed on these state charges. However, even if that were somehow true, Johnson's violation of the terms of his bond would not be excused. Also, Johnson has on multiple occasions failed to comply with the conditions of terms of probation and conditional discharge imposed by the state court. These circumstances constitute additional evidence

---

[1] Johnson attached to his motion, a letter dated July 16, 2008, from a human resources employee at Fiat Chrysler which indicates that Johnson is currently employed and has been since 5-31-17. However, the court has not been provided with any information that Johnson has a job waiting for him at the present time. In any event, this court's decision would be the same whether or not Johnson's job at Chrysler remains intact.

of Johnson's repeated disrespect for the law and demonstrate that he will be unlikely to abide by any conditions of pretrial release imposed by this court.

### (4) The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Person's Release

Finally, the court must take into account the nature and seriousness of the danger to any person or the community that would be posed by Johnson's release. 18 U.S.C. § 3142(g)(4). The Senate Report on the Bail Reform Act provides that the safety of the community "refers to the danger that the defendant might engage in criminal activity to the detriment of the community" and is to "be given a broader construction than merely danger of harm involving physical violence." S. Rep. No. 98-225, 98th Cong., 1st Sess. at 12 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3195. Congress specifically identified the narcotics trade as a danger to the community that the Bail Reform Act sought to redress. Id. at 3203. The Senate Report on the Bail Reform Act describes the circumstance in which a defendant is charged with drug trafficking as one "under which a strong probability arises that no form of conditional release will be adequate." Id. at 3202. The Senate Report specifically noted:

> It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

Id. at 3203. No ordinary or proposed condition of release adequately address the risk that Johnson will continue to participate in the drug trade upon release. Johnson has argued that his detention is unwarranted because the main target of the investigation, Anderson, is on pretrial release pending trial and the pretrial services officer has recommended Johnson's release. As the court suggested during the hearing on this matter, one of the most glaring differences is the intervening arrest and state prosecution of Johnson. As for the Pretrial Services Officer's recommendation, the court notes that the recommendation does not take into account such legal findings as weight of the evidence, 18 U.S.C. 3142(g)(2), or rebuttable presumptions for detention, 18 U.S.C. 3142 (f) and (e). And finally, because they are alleged co-conspirators, the court believes that Anderson's pretrial release actually increases the likelihood of Johnson's pretrial recidivism.

In addition to the serious danger to the community at large posed by the real possibility that Johnson will continue to engage in drug trafficking while on pretrial release, there is also evidence demonstrating that Johnson is a danger to individuals in the community. There is strong evidence that defendant has endangered DeAnna Jones and her four children, ages infant through sixteen, on multiple occasions between June 2016 and January 2017. In a verified Petition for an Order of Protection filed in case number 17 OP 165, in the Circuit Court for the Seventeenth Judicial Circuit, Winnebago County, Illinois, DeAnna Jones swore under penalty of perjury that on June 15, 2016, petitioner asked Johnson to leave because she no longer wanted to be in a relationship with him. After leaving, Johnson called petitioner all night and ultimately came back and threatened petitioner, saying, "I'm going to come in a[nd] beat your ass." While Johnson was kicking the door, Jones told him that she was going to call the police. Johnson called Jones a "police bitch." Jones called the

police, but Johnson left before they arrived. Petitioner also swore that on September 5, 2016, after a Labor Day gathering, she and Johnson had a fight involving "punching, grabbing, and scratching," and Johnson refused when she asked him to leave. On October 16, 2016, Johnson tried to prevent petitioner and her children from leaving after a "heated argument" and a physical fight. Johnson tried to hold the smallest two children so Jones could not leave. Jones' oldest son had to go into the house through the garage and get the baby so that Jones and the children could leave and stay the night at a hotel. On December 31, 2016 and into January 1, 2017, Johnson physically fought and argued with Jones. During this physical altercation, there was "punching and scratching" and things were broken in the house. On January 29, 2017, at 11 p.m., Johnson "woke the whole house" with his loud arguing. According to Jones, "this is a regular thing," and Johnson got "all up in [her] face like he's about to hit [her]." The following morning, while Jones was getting the children ready for school, Johnson screamed at Jones at the top of his lungs "your [sic] fucking slow, your [sic] stupid as hell, that . . . why I hate you."

These acts of domestic violence by Johnson stand in sharp contrast to his purported desire to be released so that he can be a good father to his children. Based on this and other evidence, the court finds that defendant would present a serious danger to persons in the community were he released.[2] Defendant argues that conditions of pretrial release such as home confinement and electronic home monitoring would assure his appearances in court and protect the public. However, the court believes that the serious risk to the community that defendant presents which this court has described above preclude such options.

## II. CONCLUSION

For the reasons stated above, after careful de novo review, based on the factors listed in § 3142(g), the court finds by clear and convincing evidence that no condition or combinations of conditions of pre-trial release will reasonably assure the safety of other persons and the community. The court notes that Johnson has a long history of violating the law and the court believes he is very likely to continue doing so if released from custody. The court believes that the only way to protect the community from continued criminal activity by Johnson is to detain him pending trial. Having made this determination, the court need not reach the flight-risk issue.

Date: 10/1/2018

ENTER:

_____
FREDERICK J. KAPALA

District Judge

---

[2] The pretrial service report also provides that "[i]t should be noted that the criminal record check further revealed an expired order of protection for a Lumont D. Johnson with a date of birth March 10, 1973. The protected persons include Jamila M. Baker (former girlfriend) and Haniefe Johnson (child). The order of protection was issued on May 4, 2015, and expired May 3, 2017."